UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN DUNN,
by and through her guardian,
STEPHEN C. ALBERY,

       Plaintiff,

and

JADELLS, INC. d/b/a
HEALTHCALL OF DETROIT, INC.,

       Intervenor - Plaintiff,

v.

       Case No. 08-12831
       Hon. Lawrence P. Zatkoff
       Mag. R. Steven Whalen

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on July 17, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter comes before the Court on Defendant's motion for summary judgment [dkt 28], Plaintiff's motion for summary judgment [dkt 29], and Intervenor - Plaintiff's motion for summary judgment [dkt 30]. In total, the parties have submitted eight briefs in conjunction with the three motions, and the time period to file reply briefs has now lapsed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would

not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART; Plaintiff's motion for summary judgment is DENIED; and Intervenor - Plaintiff's motion for summary judgment is DENIED.

## II. BACKGROUND

### A. PLAINTIFF

Plaintiff sustained serious injuries in a motor-vehicle accident that occurred in 1992. The accident resulted in a traumatic brain injury and rendered her comatose for over one month. As a result of her brain injury, Plaintiff now suffers a plethora of mental problems, including mood disorder, bi-polar disorder, hallucinations, delusions, depression, severe anxiety, and sleep disorder as well as impaired memory, cognitive skills, judgment, and problem-solving capacity. Plaintiff also broke her C-3 and C-4 vertebrae in the accident, resulting in considerable back and neck pain. These afflictions have impacted Plaintiff's physical activities, making it extremely difficult for her to care for herself. Plaintiff's situation is further complicated by unrelated health problems: she is asthmatic, blind in one eye, and HIV-positive. Plaintiff relies on a team of physicians and health-care specialists for pain management, psychiatric care, and physical therapy.

Plaintiff's motion relates primarily to her "posttraumatic abnormal anatomic alignment," which affects her back and lower extremities. This particular affliction requires extensive chiropractic care. Plaintiff visited a chiropractor regularly until sometime in 2005. According to Plaintiff, her pain flared up again in 2007 and 2008, necessitating a return to chiropractic services,

which were provided by Innerlink Chiropractic. According to Plaintiff, Defendant owes Innerlink $3,877.62 as Plaintiff's no-fault insurer. Defendant, however, refuses to pay. Additionally, Defendant refuses to pay one of Plaintiff's physicians, Dr. Jacquelyn Lockhart, for massage therapy, acupuncture, and "Traumeel injections."

### B.  INTERVENOR - PLAINTIFF

Intervenor - Plaintiff ("Intervenor") provides medical, therapeutic, and rehabilitative services to Plaintiff. Intervenor charged Defendant a rate of $490 per day from August 2007 through April 2008. The per-diem rate included occupational-therapy services, nurse visits, eight hours of home-health-aide care, medically necessary transportation, and a housing supplement. Before Intervenor assumed care responsibilities for Plaintiff in 2007, a group called Essential Support Services for Independent Existence ("ESSIE") bore those responsibilities. Because Defendant had been paying ESSIE regularly from January 2006 through August 15, 2007, prior to the switch in caretaking, Intervenor employed the same billing structure that ESSIE had utilized.

In December 2007, Intervenor received its first payment from Defendant. Immediately thereafter, however, Defendant stopped payment on the check without explanation. Defendant sent Intervenor a letter requesting further explanation of the services Intervenor was providing to Plaintiff. Intervenor responded to this letter, but Defendant apparently found the response to be unsatisfactory. On April 7, 2008, Defendant's attorney delivered a letter to Intervenor requesting that one of Intervenor's representatives undergo an Examination Under Oath. Intervenor refused to participate.

After Defendant stopped payment on its check, Intervenor began charging Defendant on a fee-for-service basis for services provided to Plaintiff. Intervenor has invoiced Defendant in this

manner from May 2008 until the present. Defendant, however, has not tendered payment to Intervenor for any of the services it has rendered. Intervenor represents that the outstanding invoices for services performed total $318,871.90.

### C. DEFENDANT

Defendant is Plaintiff's no-fault insurer. With respect to Plaintiff, Defendant takes the position that her medical records establish "a clear pattern of [Plaintiff] firing her home health aide agencies when the companies undertake efforts to increase her independence and refuse to follow her orders regarding services that are unrelated to her automobile accident." Defendant also notes that Plaintiff's treating physician believes that her chiropractic treatment, massage therapy, and acupuncture treatment are unrelated to her 1992 automobile accident and therefore, not recoverable under the No-Fault Act. Further, Defendant maintains that the Traumeel injections administered by Dr. Lockhart are experimental in nature and not subject to no-fault compensation.

Regarding Intervenor, Defendant maintains that Intervenor billed Defendant for two months of per-diem services without adequately defining the services provided. According to Defendant, it received an introductory correspondence from one of Intervenor's representatives in October 2007 in which Intervenor compared the services provided to the "closed head injury program from ESSIE, LLC." Defendant avers, however, that Intervenor never consulted with ESSIE about the composition of the the previous program. In fact, Defendant argues that Intervenor employs no individual competent to administer a closed-head injury program. Rather, Defendant contends that Intervenor permitted Plaintiff to define her own "Residential Rehabilitation Program," which included "recreational therapy."

Defendant further notes that Plaintiff handpicked her home-health aides, including a friend

of the family and a former aide from a previous provider. The aides accompanied Plaintiff on various excursions unrelated to medical treatment, such as to the movies, PetSmart, Lowe's, the grocery store, the North American International Auto Show, the African-American Festival, Meijer's, Sam's Club, the bowling alley, and eyebrow waxing and hair appointments. These excursions often included Plaintiff's children, who are licensed drivers. Defendant observes that notes from Plaintiff's home-health aides indicate that Plaintiff ordered her home-health aides to clean her home. Defendant does not believe these charges to be recoverable under the No Fault Act.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV.  ANALYSIS

Under Michigan's No-Fault Act, an insurer is liable to pay personal-protection insurance benefits "for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle." Mich. Comp. Laws § 500.3105.  Such benefits are payable for all "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." *Id.* § 500.3107(1). An expense is "allowable" if it is reasonable, reasonably necessary, and incurred. *See Nasser v. Auto Club Ins. Ass'n*, 457 N.W.2d 637, 645 (Mich. 1990).  A charge is considered reasonable if it is the "standard amount a service provider bills on behalf of every patient treated." *Broe Rehab. Servs. Inc. v. Allstate Ins. Co.*, No. 275587, 2008 Mich. App. LEXIS 820, at *17 (Mich. Ct. App. Apr. 22, 2008).  A service is reasonably necessary if it is "causally connected" to an injured individual's care, recovery, or rehabilitation. *Hamilton v. AAA Mich.*, 639 N.W.2d 837, 842–43 (Mich. Ct. App. 2001).  Finally, expenses are said to be incurred when the insurer has "a legal or equitable obligation to pay." *Burris v. Allstate Ins. Co.*, 745 N.W.2d 101, 104 (Mich. 2008).  Under Michigan law, "the question whether expenses are reasonable and reasonably necessary is generally one of fact for the jury." *Nasser*, 457 N.W.2d at 647.  In cases where the Court can state with certainty that an expense was both reasonable and necessary, however, it may issue a decision as a matter of law.  *Id.*

### A.     PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff argues that Defendant owes a total of $13,635.62 for chiropractic services performed by Innerlink Chiropractic and procedures performed by her pain management and rehabilitation physician, Dr. Lockhart.  Plaintiff contends that these services qualify as "allowable

expenses" under Michigan's No-Fault Act because the charges are reasonable, necessary, and incurred. Defendant responds that summary judgment is inappropriate because Plaintiff's treating physiatrist denies that the services in question are reasonably related to Plaintiff's motor-vehicle accident and because whether an expense is reasonable and necessary is generally a question of fact for a jury to decide.

With respect to Plaintiff's chiropractic treatment, the original basis for Defendant's denial of benefits is murky. Neither party has produced a letter or explanation of Defendant's denial of benefits. Deposition testimony suggests that Defendant simply considered the lapse in chiropractic treatment between 2005 and 2007 to be indicative of some intervening cause. The materials before the Court also reveal that Defendant contacted Plaintiff's physiatrist, Dr. Gary Chodoroff, MD, on February 13, 2008, inquiring whether he considered various treatments, including those chiropractic in nature, to be related to Plaintiff's 1992 motor-vehicle accident. Defendant made this inquiry of Dr. Chodoroff several months prior to the date on which Plaintiff filed her complaint. Dr. Chodoroff opined that the chiropractic treatments did not relate to Plaintiff's accident. Other physicians and medical personnel familiar with Plaintiff, however, contend that the treatments do relate to Plaintiff's accident.

The burden to establish the reasonableness and necessity of services lies with Plaintiff. *See, e.g.*, *Spect Imaging, Inc. v. Allstate Ins. Co.*, 633 N.W.2d 461, 465 (Mich. Ct. App. 2001). Construing the facts in the light most favorable to Defendant as the non-moving party, the Court is unable to state that Plaintiff has established that her chiropractic services were reasonable and necessary as a matter of law. Summary judgment is accordingly inappropriate.

The Court reaches the same conclusion regarding Dr. Lockhart's services, which included

massage therapy, acupuncture, and Traumeel injections. Dr. Chodoroff opined, "I do not feel that massage therapy is necessary as related to the auto accident of 2/07/92." Defendant also contends that the Traumeel injections are experimental in nature and not approved by the Food and Drug Administration ("FDA"). Dr. Lockhart disputes these contentions, believing the treatment to be necessary and that the Traumeel injections are FDA approved. Plaintiff, who bears the burden of establishing the reasonableness and necessity of medical services, has not provided the Court with any documentation regarding the status of Traumeel injections. Construing the facts in the light most favorable to Defendant as the non-moving party, the Court cannot state that Dr. Lockhart's services were reasonable and necessary as a matter of law, nor may the Court opine with any degree of certainty about whether Traumeel injections are experimental in nature or FDA approved. Summary judgment is accordingly inappropriate; the Court DENIES Plaintiff's motion for summary judgment.

      B.      **INTERVENOR'S MOTION FOR SUMMARY JUDGMENT**

Intervenor argues that Defendant breached its statutory obligations to pay for Plaintiff's home-health-care services. Intervenor observes that Defendant paid prior home-health-care providers for such services without objection until Intervenor became Plaintiff's provider. Intervenor alleges that Defendant owes it $318,871.90 for services rendered. Defendant responds that it is not responsible for payments that amount to recreational transportation. Defendant further argues that Intervenor's "Residential Rehabilitation Program," which was designed not by a medical professional but by Plaintiff herself, lacks therapeutic value and cannot be considered to be payable as a no-fault benefit.

On October 9, 2007, Intervenor submitted to Defendant two months' worth of per-diem

billings along with an introductory letter that listed Intervenor's services, including "medical transportation (automobile), 8 hours per day of a home health aide, physical and occupational therapy as indicated, RN supervision, recreational therapy, and ancillary residential expenses." On December 4, 2007, Defendant requested further explanation of Intervenor's services. Intervenor responded to this request on December 18, 2007. Defendant determined the response to be insufficient and requested that one of Intervenor's representatives appear for a statement under oath regarding the "Residential Rehabilitation Program." Intervenor did not respond to this request. Defendant now alleges that Intervenor was charging Defendant to accompany Plaintiff on errands and recreational outings and to clean her home. Intervenor contends that such services are reasonable and necessary given the afflictions Plaintiff suffers. Based on the materials before it, the Court is unable to rule as a matter of law whether such services are reasonably necessary relative to Plaintiff's medical condition. Accordingly, Intervenor's motion for summary judgment is DENIED.

### C.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant argues that Intervenor "has not lawfully rendered its so-called 'residential rehabilitation program'" because Intervenor does not hold a license, nor does it employ a licensed individual, to administer such a program for a closed-head injured client. Defendant also disputes Intervenor's request for an $800 "Monthly Rental Supplement" because it "represents nothing more than the normal and ordinary needs and expenses which existed for [Plaintiff] both before and after her accident and are not reimbursable expenses." Defendant also maintains that it is only liable for Plaintiff's medically necessary transportation, not for transportation costs unrelated to her medical treatment. Finally, Defendant takes the position that it is not responsible for costs associated with

"light housekeeping."

Intervenor contends that Michigan has no licensure requirements for home-health-care agencies. Intervenor avers that Defendant has waived the right to challenge reimbursement for housing supplement expenses or is equitably estopped from doing so because Defendant paid ESSIE for the same expenses. With respect to transportation costs, Intervenor argues that it may recover those expenditures because they are necessary for Plaintiff's participation in various functions of daily life. Lastly, Intervenor claims that "light housekeeping" is "incidental to the physician-prescribed attendant care functions" of the home-health-care aides.

### *1. Residential Rehabilitation Program*

Defendant's argument that Intervenor's Residential Rehabilitation Program was unlawfully rendered relies in large part on the holding in *The Healing Place at North Oakland Medical Center v. Allstate Insurance Co.*, 744 N.W.2d 174 (Mich. Ct. App. 2007). In that case, the court stated that "[i]f both the individual and the institution *were each required to be licensed* and either was not, the 'lawfully render[ed]' requirement would be unsatisfied." *Id.* at 178 (emphasis supplied). Defendant does not present any authority upon which the Court may conclude that Intervenor was required to be licensed for the services provided nor did Defendant submit a reply brief to address Intervenor's contention that it was not required to be licensed. Accordingly, the Court DENIES Defendant's motion with respect to the Residential Rehabilitation Program.

### *2. Monthly Rent Supplement*

In *Griffith v. State Farm Mutual Auto Insurance Co.*, 697 N.W.2d 895 (Mich. 2005), the Michigan Supreme Court considered whether a no-fault insurer was obligated to pay for the insured's post-accident food expenses, which would have been incurred regardless of the accident.

The court concluded that the insured's "food costs are completely unrelated to his 'care, recovery, or rehabilitation' and are not 'allowable expenses' under [the No Fault Act]." *Id.* at 903. The court noted that "if [the insured] had never sustained, or were to fully recover from, his injuries, his dietary needs would be no different than they are now." *Id.* Michigan courts have extended *Griffith's* reasoning to room-and-board expenses. *See Dowadait v. State Farm Mut. Auto. Ins. Co.*, No. 04-71124, 2006 U.S. Dist. LEXIS 61474, at *9 (E.D. Mich. Aug. 18, 2006) ("Mr. Dowadait's room and board and other living costs are ordinary daily costs which he would incur regardless of whether he was injured."); *Peabody v. State Farm Mut. Auto. Ins. Co.*, No. 04-73787, 2006 U.S. Dist. LEXIS 546, at *4 (E.D. Mich. Jan. 10, 2006) ("Plaintiff has not established that any alleged housing or living costs above [those to make it handicap accessible] were related to Jennifer's injuries."). Intervenor does not deny that the Michigan courts have recently held that such payments are not compensable under the No Fault Act but argues that Defendant has either waived this argument or should be equitably estopped from denying coverage for the supplement.

A party is said to waive a particular right "only where one, with full knowledge of material facts, does or forbears to do something inconsistent with the existence of the right in question or his intention to rely on that right." *Fitzgerald v. Hubert Herman, Inc.*, 179 N.W.2d 252, 254 (Mich. Ct. App. 1970). In order to constitute waiver, "there must be an existing right, benefit, or advantage, knowledge, actual or constructive, of the existence of such right, benefit, or advantage and an actual intention to relinquish it, or such conduct as warrants an inference of relinquishment." *Id.* at 253. In this case, Defendant previously paid ESSIE the same monthly rent supplement to which it now objects. Defendant, however, tendered no payments to Intervenor for the rent supplement and made no representations whatsoever to Intervenor regarding the rent supplement. Intervenor relies on the

11

fact that Defendant previously paid rent supplements to an unrelated home-health-care agency. The fact that Defendant previously paid a non-party for particular services does not waive Defendant's right to contest subsequent charges from an unrelated provider. The Court is not inclined to find a waiver to exist under these circumstances.

The doctrine of equitable estoppel "arises where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts." *Westfield Cos. v. Grand Valley Health Plan*, 568 N.W.2d 854, 856–57 (Mich. Ct. App. 1997). Defendant made no representations or admissions to Intervenor regarding the rent supplement. Nor did Defendant ever tender payment to Intervenor for the supplement. To hold Defendant liable under an equitable-estoppel theory based on a relationship it had with an unrelated non-party would be to extend the bounds of the doctrine too far. Accordingly, the Court HEREBY GRANTS Defendant's motion as it relates to the monthly rent supplement.

### *3. Transportation and Attendant Care*

As stated in Part IV(B), *supra*, the Court is unable to rule as a matter of law whether these services to which Defendant objects are reasonably necessary. Therefore, these services raise questions of fact best reserved for a jury. The Court DENIES Defendant's motion with respect to Plaintiff's transportation and attendant-care costs.

## V. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that Intervenor's motion for summary judgment is DENIED.

IT IS SO ORDERED.

|  |  |
|---|---|
| Date: July 17, 2009 | S/Lawrence P. Zatkoff<br>HONORABLE LAWRENCE P. ZATKOFF<br>UNITED STATES DISTRICT JUDGE |