# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KAREN DUNN,
by and through her guardian,
STEPHEN C. ALBERY,

      Plaintiff,

and

JADELLS, INC. d/b/a
HEALTHCALL OF DETROIT, INC.,

      Intervenor - Plaintiff,

                              Case No. 08-12831
v.                                Hon. Lawrence P. Zatkoff

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.
_____/

## OPINION & ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on July 8, 2010

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter comes before the Court on Defendant's motion for partial judgment as a matter

of law in a jury trial (JMOL) and/or motion for new trial [dkt139] and Defendant's motion to alter

or amend the judgment to include a setoff of attorney fees due and owing [dkt 140].  The parties

have fully briefed the motions.  The Court finds that the facts and legal arguments are adequately

presented in the parties' papers such that the decision process would not be significantly aided by

oral argument. Therefore, pursuant to E.D. Mich. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons stated below, both motions are DENIED.

## II. BACKGROUND

Plaintiff sustained serious injuries in a motor-vehicle accident that occurred in 1992. The accident resulted in a traumatic brain injury and rendered her comatose for over one month. As a result of her brain injury, Plaintiff now suffers from a plethora of mental problems, including mood disorder, bi-polar disorder, hallucinations, delusions, depression, severe anxiety, and sleep disorder as well as impaired memory, cognitive skills, judgment, and problem-solving capacity. Plaintiff also broke her C-3 and C-4 vertebrae in the accident, resulting in considerable back and neck pain. These afflictions have impacted Plaintiff's physical activities, making it extremely difficult for her to care for herself. Plaintiff's situation is further complicated by unrelated health problems: she is asthmatic, blind in one eye, and HIV-positive. Plaintiff relies on a team of physicians and health-care specialists for pain management, psychiatric care, and physical therapy. Intervenor-Plaintiff has provided such care to Plaintiff since 2007.

Plaintiff brought this action against Defendant for non-payment of no-fault insurance benefits arising out of the 1992 motor vehicle accident. Defendant removed this action to this Court on July 2, 2008. On November 21, 2008, the Court entered a stipulation into the record permitting Healthcall of Detroit, Inc. to intervene in this matter. On September 3, 2009, Plaintiff released all claims against Defendant, leaving only the claims of Intervenor-Plaintiff in this case. Intervenor-Plaintiff seeks reimbursement from Defendant for Plaintiff's medical expenses under the Michigan No-Fault Insurance Act on the basis that such expenses were reasonable, reasonably necessary, and

incurred. On February 1, 2010, the jury empaneled in this action returned an award in favor of Intervenor-Plaintiff in the amount of $352,629.16. A judgment encapsulating the jury's verdict was entered on February 11, 2010.

## III. LEGAL STANDARD

Fed. R. Civ. P. 50 governs motions for judgment as a matter of law and new trial. At the close of a party's proofs, but before the jury has rendered its verdict, a party may move for judgment as a matter of law:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a). After the jury has returned its verdict, a party may then "renew its request for judgment as a matter of law" by way of a post-trial motion:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment — or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged — the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
> (1) allow judgment on the verdict, if the jury returned a verdict;
>
> (2) order a new trial; or
>
> (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b).

"In federal court diversity cases, the sixth circuit adheres to the minority rule that state law governs the standard for granting motions for directed verdicts and judgments notwithstanding the verdict." *J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1482 (6th Cir. 1988) (citations omitted). In Michigan,

> A judgment notwithstanding the verdict is appropriate only if the evidence is insufficient as a matter of law to support a judgment for the nonmoving party. When deciding a motion for judgment notwithstanding the verdict, the court must view the evidence in a light most favorable to the nonmoving party, giving the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence. If the evidence is such that reasonable persons could differ, the question is one for the jury and judgment notwithstanding the verdict is improper.

*Id.* at 1483 (quoting *Slanga v. Detroit*, 393 N.W.2d 487, 488 (Mich. Ct. App. 1986) (citation omitted), *remanded for reconsideration on other grounds*, 417 N.W.2d 479 (Mich. 1988)).

However, a post-verdict renewal of a motion for judgment as a matter of law is limited to the same grounds upon which that party moved pre-verdict; in other words, a post-verdict motion for judgment as a matter of law may not advance additional grounds that were not raised in the pre-verdict motion. *See Am. & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 159-60 (6th Cir. 1997) (noting that the purpose of this policy is "to narrowly restrict the grounds used to overturn a jury verdict by requiring that parties raise important issues *before* the case is submitted to the jury"); *see also* 2006 Advisory Committee Notes to Fed. R. Civ. P. 50 ("Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion.").

A federal district court is empowered to set aside a jury verdict and award a new trial where "the verdict is against the clear weight of the evidence." *Barnes v. Owens-Corning Fiberglass*

*Corp.*, 201 F.3d 815, 820-21 (6th Cir. 2000). If a "reasonable juror could reach the challenged verdict, a new trial is improper." *Id.* at 821. "'[C]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.'" *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967) (citations omitted).

## IV. ANALYSIS

### A.   MOTION FOR JUDGMENT AS A MATTER OF LAW

#### 1.      Occupational Therapy and Nursing Services

Defendant claims that it is entitled to judgment as a matter of law to the extent the jury awarded Intervenor-Plaintiff damages for occupational therapy and nursing services that were provided to Plaintiff without express medical authorization from Plaintiff's doctors. Defendant states that under the Michigan No-Fault Insurance Act, Intervenor-Plaintiff was only entitled to receive benefits for "allowable expenses" pursuant to Mich. Comp. Laws § 500.3107(1). Defendant then identifies testimony from Plaintiff's occupational therapist and nurse, which indicate that services were performed on behalf of Plaintiff before her doctors issued written prescriptions for such services. Thus, Defendant argues, to the extent the jury awarded damages for services performed without written prescriptions, the services were not "allowable expenses" for which Intervenor-Plaintiff may seek no-fault benefits.

Under Mich. Comp. Laws § 500.3107(1)(a), "[a]llowable expenses consist[] of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Significantly, the applicable statute neither requires medical authorization nor written prescriptions as a prerequisite for a service to be considered an

allowable expense. Defendant cites no legal authority in support of its position. Michigan courts, however, have not construed § 500.3107 as requiring written prescriptions in order for a service to be deemed an allowable expense. In *Hamilton v. AAA Mich.*, 639 N.W.2d 837, 842-43 (Mich. Ct. App. 2001), the court noted that a written prescription is but evidence of whether a service is reasonably necessary. *Id.* at 549 ("Something more, *such as* a specific prescription by a physician or medical professional, is required to establish the causal relationship required under the no-fault act.") (emphasis added). *See also Kallabat v. State Farm Mut. Auto. Ins. Co.*, 662 N.W.2d 97, 100-101 (Mich. Ct. App. 2003) ("[T]he jury is entitled to consider all the evidence introduced by the plaintiff to decide whether the plaintiff has proved by a preponderance of the evidence that the expenses were reasonable and necessary."). Thus, whether Intervenor-Plaintiff billed Defendant for services performed without written prescriptions is not dispositive. Since Defendant presents no other argument in support of its position, the Court finds that Defendant has failed to demonstrate that there was no legally sufficient basis for the jury to reach its decision with respect to occupational therapy and nursing services.

### 2.     Replacement Services and Transportation Expenses

Defendant also claims that it is entitled to judgment as a matter of law to the extent the jury awarded Intervenor-Plaintiff reimbursement for the following services: grocery shopping, laundry, and housekeeping. Defendant asserts, without discussion or legal authority, that these services constitute "replacement services," which are only recoverable for three years following a motor-vehicle accident under Mich. Comp. Laws § 500.3107(1)(C), and that they are not recoverable here because eighteen years have passed since Plaintiff's accident. Defendant also claims that it is entitled to judgment as a matter of law for transportation expenses, which Defendant argues were

not incurred for medically necessary reasons.

However, the Court finds that Defendant is barred from asserting these claims at this time. During trial, Defendant moved for judgment as a matter of law on the grounds that occupational therapy and nursing care could not be provided without a written prescription. Defendant now requests a judgment as a matter of law on two additional grounds: (1) grocery shopping, laundry, and housekeeping constitute replacement services, which are not recoverable; and (2) the transportation services provided to Plaintiff are not recoverable. Since Defendant did not assert these grounds for judgement as a matter of law in its pre-verdict motion, Defendant cannot assert them in its post-verdict motion. *See Am. & Foreign Ins. Co.*, 106 F.3d at 160 (holding that a judgment as a matter of law "is not available at anyone's request on an issue not brought before the court prior to submission of the case to the jury").

### 3.    Conclusion

Accordingly, for the reasons stated above, Defendant's motion for judgment as a matter of law is denied.

## B.    MOTION FOR NEW TRIAL

### 1.    Due Process

Defendant claims that a new trial is warranted because the Court excluded witnesses that Defendant attempted to add to its witness list after April 6, 2009. Pursuant to the Court's scheduling order, witness lists were to be exchanged by April 6, 2009. Both parties submitted witness lists on April 6, 2009. On September 1, 2009, Defendant filed its First and Second Amended Witness Lists and served an "Amended Disclosure Statement" on Intervenor-Plaintiff, naming two new lay witnesses: (1) Jennifer Keeney, an occupational therapist who performed a medical evaluation of

Plaintiff on August 15, 2009; and (2) Dawn Wahlstrom, the claims adjuster for Defendant who was then handling Plaintiff's file. On September 11, 2009, Defendant submitted its Third Amended Witness List, adding Patricia Parr-Armelagos, an employee of Defendant. The Final Prerial Conference took place on September 16, 2009. On September 21, 2009, Defendant filed its Fourth Amended Witness List, adding Theresa LaRosa and Kathi Rogers.

On December 23, 2009, the Court granted Intervenor-Plaintiff's motion in limine to exclude Defendant's lay witnesses that were disclosed after the scheduling order's April 6, 2009, deadline because Defendant failed to seek the Court's permission before amending its witness list. The Court also noted that Defendant attempted to add Theresa LaRosa and Kathi Rogers as witnesses after the Final Pretrial Conference, in violation of E.D. Mich. Local Rule 16.2(b)(8).

Defendant claims that it is entitled to a new trial because the Court deprived Defendant of its procedural due process rights under the Fifth Amendment to the United States Constitution by preventing Defendant from presenting an adequate defense. According to Defendant, Intervenor-Plaintiff employed home health aides, occupational therapists and physical therapists who were hired after April 6, 2009, and who performed services on behalf of Plaintiff between April 6, 2009, and the date of trial. Without an opportunity to cross-examine such individuals, Defendant claims that it was wholly unable to present a defense for bills submitted between April 6, 2009, and the date of trial.

The Court first notes that Defendant has failed to cite any legal authority supporting the position that a Court's scheduling order can provide the basis for a Fifth Amendment deprivation of procedural due process claim. *See CPC Int'l, Inc. v. Aerojet-General Corp.*, No. 89-10503 CA, 1992 U.S. Dist. LEXIS 11563, at *5-6 (W.D. Mich. May 13, 1992) ("[Litigant's] argument that the

scheduling order violates the Fifth Amendment borders on the bizarre.").  Under Fed. R. Civ. P. 16, district courts have broad discretion to enforce their scheduling orders.  *See Estes v. King's Daughters Med. Ctr.*, 59 Fed. Appx. 749, 752 (6th Cir. 2003) ("Rule 16 grants district courts broad discretion to enforce their scheduling orders.").

The Court's scheduling order stated the following:  "No witness may be called for trial unless that witness' name and address is listed, unless the Court rules, prior to trial, that there was good cause for failing to list such witness."  *See also* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").  The reason for this is that discovery follows the disclosure of witnesses, wherein the parties have the opportunity to depose the witnesses and prepare for trial.  Without a deadline for the disclosure of witnesses, a party could add witnesses on the eve of trial and leave its adversary with no opportunity to depose the witnesses or adequately prepare for trial.

The Court finds that its scheduling order did not deprive Defendant of its Fifth Amendment right to procedural due process.  Defendant was free to seek leave from the Court to amend the scheduling order and request that its untimely disclosed witnesses be available for trial.   Instead, Defendant operated under the assumption that it possessed the power to amend the Court's scheduling order however and whenever it pleased.  Defendant's mistake in this regard does not amount to a Constitutional violation warranting a new trial.   Moreover, the Court disagrees with Defendant's assertion that it was precluded from presenting a defense to Intervenor-Plaintiff's claims for expenses incurred between April 6, 2009, and the date of trial.  Joel Szirtes, Intervenor-Plaintiff's director of operations, testified during trial and was subject to thorough cross-examination with respect to all charges submitted to Defendant, including those submitted between August 6,

2009, and the date of trial. Sanford Szirtes, Intervenor-Plaintiff's President, was similarly available for cross-examination. Accordingly, the Court finds that its decision to enforce its scheduling order does not warrant the grant of a new trial.

### 2. Special Jury Instructions

Generally, "the district court has broad discretion in determining appropriate jury instructions." *United States v. Townsend*, 796 F.2d 158, 163 (6th Cir. 1986). Courts review jury instructions as a whole to determine whether they fairly and fully explain the issues and applicable law to the jury. *United States v. Newcomb*, 6 F.3d 1129, 1132 (6th Cir. 1992).

Here, the Court supplemented Michigan Standard Civil Jury Instruction 35.03 with the following language:

> An insurer is liable to pay insurance benefits for any accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle. In order for an injury to arise out of out the use of a motor vehicle, there must be a causal connection between the injury and the use of a motor vehicle, which connection must be more than incidental or fortuitous. The injury must be a foreseeable consequence of the normal use of a motor vehicle.

> If the motor vehicle is one of the causes, a sufficient causal connection exists even though there are other independent causes. As a result, in addition to injuries immediately and directly caused by the motor vehicle accident, an insurer also has a duty to pay benefits where an insured party has a pre-existing injury or condition that is worsened, aggravated, complicated, or exacerbated by the auto accident injury.

> In other words, if the injuries sustained in the auto accident complicate a person's pre-existing medical condition, the insurance company still has a duty to provide insurance coverage to that person under the No-Fault Act. An insurance company must also provide coverage for medical complications that later arise, if those complications are, at least in part, due to the auto accident injury.

> There is no requirement that an injured person must exclude or rule

out all other possible causes of her injury in order to prove that the injury arose from an auto accident. This means that the auto accident does not have to be the sole cause of the person's injuries; as long as the auto accident was a contributing cause, then recovery under the No-Fault Act is appropriate.

A service provider may charge a reasonable amount for the products, services, and accommodations rendered. The charge shall not exceed the amount the person or institution customarily charges for like products, services, and accommodations in cases not involving insurance.

An expense can arise in the form of a product, a service, or an accommodation made to the injured person. An expense is reasonably necessary if the product, service, or accommodation is causally connected to the injured person's care, recovery, or rehabilitation.

The term "recovery" has been defined as "restoration or return to any further and better condition, especially to health from sickness, injury, addiction, etc." The term "rehabilitation" has been defined as "to restore or bring to a condition of good health, ability to work, or productive activity." The term "care" has been given a broader meaning than "recovery" and "rehabilitation" because it can encompass expenses for products, services, and accommodations that are reasonably necessary due to the accident but that may not restore a person to her pre-injury state.

An expense does not need to be strictly medical in nature to be considered an allowable expense; for example, certain services are considered an allowable expense if they are causally connected to the injured person's care, recovery, or rehabilitation.

Transportation expenses incurred in connection with obtaining medical treatment or for the purpose of medical treatment are recoverable as an allowable expense.

An expense is incurred if the service was performed with a reasonable expectation of payment.

Defendant claims that it is entitled to a new trial because the language supplementing Michigan

Standard Civil Jury Instruction 35.03 was one-sided, entirely verbose, unnecessary, and misstated

Michigan law. The Court does not agree that the additional language is one-sided, verbose, or unnecessary, as each instruction related to an issue at trial and served to provide greater clarity for the jury. The Court also does not agree that such language misstates Michigan law, but the Court will address Defendant's legal arguments below.[1]

### a). Pre-Existing Injury

Defendant claims that the following instruction misstates Michigan law: "[A]n insurer also has a duty to pay benefits where an insured party has a pre-existing injury or condition that is worsened, aggravated, complicated, or exacerbated by the auto accident injury." Defendant claims that this instruction is inaccurate because the jury must differentiate between services necessitated because of a pre-existing injury and those necessitated by injuries sustained in the automobile accident. However, the Court does not agree that the above statement instructs the jury not to differentiate between pre-existing injuries and injuries caused by the automobile accident; it merely instructs the jury that an insurer is responsible when an automobile accident worsens, aggravates, complicates, or exacerbates a pre-existing injury. Thus, the Court finds that Defendant has failed to establish that this statement is legally inaccurate.

### b). Reasonable Charge

Defendant claims that the following instruction misstates Michigan law: "[A reasonable] charge shall not exceed the amount the person or institution customarily charges for like products, services, and accommodations in cases not involving insurance." Defendant argues that this statement is inaccurate because it implies that the reasonableness of a healthcare provider's charges

---

[1]The Court notes that Defendant argues in favor of a new trial based on several jury instructions that the Court did not read to the jury. Accordingly, the Court need not address such alleged errors.

depends upon what that provider customarily charges, rather than what other healthcare providers in the industry customarily charge. However, Defendant cites no legal authority in support of its assertion. Thus, the Court finds that Defendant has failed to show that this statement contradicts applicable Michigan law. Moreover, the Court finds that the instruction is consistent with Michigan law:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may *charge a reasonable amount* for the products, services and accommodations rendered. *The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance.*

Mich. Comp. Laws § 500.3157 (emphasis added).

### c). Strictly Medical Expenses

Defendant claims that the following instruction misstates Michigan law: "An expense does not need to be strictly medical in nature to be considered an allowable expense; for example, certain services are considered an allowable expense if they are causally connected to the injured person's care, recovery, or rehabilitation." Defendant argues that this instruction is inaccurate as it relates to transportation expenses. According to Defendant, an insured may only seek reimbursement for transportation expenses when the expenses were incurred for the purpose of obtaining medical treatment, and the instruction is inaccurate because it implies that transportation expenses are recoverable so long as they are "causally connected to the injured person's care, recovery, or rehabilitation."

However, the Court does not agree that the statement in question instructs the jury as

Defendant suggests. The language merely serves to inform the jury that an insured may seek recovery for expenses that are not strictly medical in nature. *See Hamilton*, 639 N.W.2d at 842-43 (stating that the "no-fault act is not limited strictly to the payment of medical expenses" and that the test is whether the expenses are "causally connected" to the injured person's care, recovery, or rehabilitation). The instruction does not relate specifically to transportation expenses, as Defendant contends. Since Defendant does not argue that an insured may only recover expenses that are strictly medical in nature, the Court finds that Defendant has failed to show that this instruction is legally inaccurate. Furthermore, the jury was later instructed that transportation expenses are recoverable when "incurred in connection with obtaining medical treatment or for the purpose of medical treatment." Accordingly, the Court finds that Defendant was not prejudiced by this jury instruction such that a new trial is warranted.

### 3.     Fraud Instruction

Defendant claims that it is entitled to a new trial because the Court improperly refused to give Defendant's requested jury instruction regarding fraud. This is now the third time in which Defendant has brought this issue before the Court. The Court will first discuss its prior rulings before addressing the present claim. In the Court's January 15, 2010, order, the Court denied Defendant's request to have the following instruction read to the jury:

> Defendant State Farm claims that HealthCall defrauded it by submitting bills and invoices for services that were not performed.
>
> To establish fraud, State Farm has the burden of proving each of the following elements by clear and convincing evidence:
>
> 1.     HealthCall made a statement or representation of a material fact(s);
>
> 2.     That statement or representation was false when it

was made;

3.     HealthCall knew the statement or representation was false when it made the statement or representation, or HealthCall made it recklessly, that is, without knowing whether it was true;

4.     HealthCall made the statement or representation with the intent that State Farm would rely on it;

State Farm must prove each of these elements by clear and convincing evidence. This means that State Farm must do more than merely persuade you that the proposition is probably true. To be clear and convincing, the evidence must be strong enough to cause you to have a clear and firm belief that the proposition is true. The clear and convincing burden of proof is higher than the preponderance of evidence standard that will be applied to HealthCall's claim.

You may use circumstantial evidence to determine whether State Farm has met the above elements by the stated burden.

If you decide State Farm has failed to prove any one of these elements by clear and convincing evidence, then you must award HealthCall damages for all allowable expenses it established by a preponderance of evidence.

In Defendant's brief in support of its requested instruction, Defendant stated that *"Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 247 NW2d 813, (1976) . . . delineates what State Farm must prove in order to be successful in [its fraud] defense." Defendant cited no other cases regarding the elements of fraud. Intervenor-Plaintiff concurred that *Hi-Way Motor* governed this issue. In *Hi-Way Motor*, the following are listed as the elements of fraud:

(1)     A party must make a material misrepresentation;

(2)     That was false;

(3)     That when the party made the material misrepresentation, he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion;

(4)     That the party made it with the intention that it be acted upon by the opposing party;

(5)     That the opposing party acted in reliance upon it; and

(6)     That the opposing party thereby suffered injury.

247 N.W.2d at 816.  In denying Defendant's requested instruction, the Court noted that the instruction was legally inaccurate because it did not include the final two elements of fraud, as listed in *Hi-Way Motor*: reliance and damages.  Additionally, the Court found that since Defendant had not paid Intervenor-Plaintiff for any services, Defendant could not have relied upon any alleged misrepresentations or been damaged thereby.  For these reasons, the Court held that Defendant was not entitled to its requested instruction on fraud.

In its motion for reconsideration, Defendant contended that the Court's prior order contained a palpable defect not because the Court misapplied the law under *Hi-Way Motor*, but because Defendant "misled" the Court regarding the correct law to be applied.  Defendant admitted, without justification or explanation, that it "mistakenly cited *Hi-Way*, *supra*, as authority for its proposed special instruction."  Defendant then argued that *Hi-Way Motor* reflects the standard for proving fraud in a tort action, and that the following standard is used when fraud, also known as false swearing, is asserted as a defense in an insurance action:

(1)     The insured made a misrepresentation;

(2)     The misrepresentation was material;

(3)     The misrepresentation was false;

(4)     The claimant knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth; and

(5)     The claimant made the material misrepresentation with the intention that the insurer

16

would act upon it.

*See Mina v. Gen. Star Indem. Co.*, 555 N.W.2d 1, 11 (Mich. Ct. App. 1996), *rev'd in part on other grounds*, 568 N.W.2d 80 (Mich. 1997).  Under this framework, reliance and damages caused by reliance need not be proven in order to establish an affirmative defense based on fraud.

However, Defendant cited no authority to support giving its newly requested instruction under the circumstances of this case.  Defendant only established in its brief that when an insured party under an insurance policy or contract submits fraudulent proof of loss, the insurer has an affirmative defense of false swearing, which allows the insurer "[t]o void [the] policy because the insured has willfully misrepresented a material fact."  *Mina*, 555 N.W.2d at 11.  Every case cited by Defendant regarding the elements that must be proven to establish its defense of false swearing was based on a dispute between an insured and an insurer, pursuant to a contract of insurance between the two.

In this case, there is no contract of insurance between Intervenor-Plaintiff and Defendant that can be voided.  Intervenor-Plaintiff's right to seek reimbursement from Defendant derives solely from the no-fault statute.  *See* Mich. Comp. Laws § 500.3112; *Lakeland Neurocare Ctrs. v. State Farm Mut. Auto. Ins. Co.*, 645 N.W.2d 59, 62 (Mich. Ct. App. 2002) ("Mich. Comp. Laws § 500.3112 specifically contemplates the payment of benefits to someone other than the injured person as reflected in its inclusion of the phrase 'benefits are payable to or for the benefit of an injured person' . . . .").  Since Intervenor-Plaintiff's rights do not derive from a policy or contract, the Court held that Defendant failed to establish that the authority it provided for its instruction on false swearing was, in any way, applicable under the circumstances of this case.   Defendant did not provide the Court with a single case in which false swearing was used as an affirmative defense

against a third party to an insurance contract, such as Intervenor-Plaintiff. As a result, the Court held that Defendant failed to demonstrate that the Court's order denying its requested instruction contained a palpable defect by applying the wrong law. Defendant asked the Court to apply the law set forth in *Hi-Way Motor*, and Defendant made no argument that the Court incorrectly applied the legal standard in *Hi-Way Motor*.

In denying Defendant's motion for reconsideration, the Court also found that correcting the alleged error in its prior ruling would not result in a different disposition of the case. Defendant averred that if the jury was given its newly requested instruction, a favorable verdict would preclude Intervenor-Plaintiff from recovering, either in total or in part.

Defendant's authority for its newly requested instruction suggested that Defendant's goal was to completely preclude Intervenor-Plaintiff from recovering by proving that Intervenor-Plaintiff made at least one misstatement of material fact with the intent to defraud. Defendant contended that Intervenor-Plaintiff's right to seek reimbursement from Defendant was derivative of the insured's right to recover. Thus, Defendant suggested, any action taken by the insured that would have voided the insurance contract would have also voided the contract if taken by the third party. According to Defendant, Intervenor-Plaintiff committed acts that would have voided the underlying contract if they had been committed by the insured, such that Intervenor-Plaintiff would have also been precluded from recovering. However, Defendant provided the Court with no authority to support its contention that the acts of a third party to an insurance contract can void the underlying contract between the insured and the insurer, thus precluding the third party from recovering. Therefore, the Court found that Defendant had not adequately supported its position that Intervenor-Plaintiff could be wholly precluded from recovering if Defendant's instruction on fraud were given to the jury.

Alternatively, Defendant wished to have its fraud instruction read to the jury so that the jury would reduce any damages award to the extent it found that Intervenor-Plaintiff fraudulently billed for services that were not actually rendered. However, the Court found that this outcome would not have resulted in a different disposition of the case. Intervenor-Plaintiff sought reimbursement under the no-fault act for expenses that were reasonable, reasonably necessary, and incurred. If the jury found that Intervenor-Plaintiff billed Defendant for services that were not performed, and that Intervenor-Plaintiff's charges were therefore not incurred, then the jury would have been precluded from awarding Intervenor-Plaintiff damages for such expenses. *See* Mich. Comp. Laws § 500.3107; *Nasser v. Auto Club Ins. Ass'n*, 457 N.W.2d 637, 645 (Mich. 1990) (stating that an expense is recoverable as an allowable expense when the charge is reasonable, the expense is reasonably necessary, and the expense is incurred). The Court noted that the same result would occur whether the jury reduced Intervenor-Plaintiff's award due to fraud or due to the fact that the charges were not actually incurred. Intervenor-Plaintiff's award would be equally reduced in both scenarios.

In its present motion, Defendant again challenges the Court's January 15, 2010, order denying its proposed jury instruction on fraud. Defendant advances the same argument it advanced in its motion for reconsideration, *i.e.*, that reliance and prejudice are not elements of its false swearing defense. Defendant also regurgitates its conclusory argument that the false swearing defense applies to Intervenor-Plaintiff, a third party to the insurance contract, to the same extent that it would have applied to Plaintiff, the insured. However, Defendant seems to have ignored the three reasons why the Court denied Defendant's motion for reconsideration.

First, to the extent Defendant sought to preclude Intervenor-Plaintiff from recovering in total, the Court held that Defendant provided the Court with no authority to support its contentions that

(1) it could assert false swearing as an affirmative defense against a third party to an insurance contract, and (2) the acts of a third party to an insurance contract can void the underlying contract between the insured and the insurer, thus precluding the third party from recovering. Several months passed between the date of the Court's order denying Defendant's motion for reconsideration and date on which its present motion became fully briefed, yet Defendant was unable to provide the Court with any additional authority in support of its position.

Second, to the extent Defendant sought to preclude Intervenor-Plaintiff from recovering in part, the Court held that Defendant was not prejudiced by the refusal to read the jury its proposed instruction because if the jury found that Intervenor-Plaintiff billed Defendant for services that were not performed, and that Intervenor-Plaintiff's charges were therefore not incurred, then the jury would be precluded from awarding Intervenor-Plaintiff damages for such expenses. Defendant does not rebut this finding in its present motion. Thus, for the reasons previously stated in the Court's order denying Defendant's motion for reconsideration, the Court finds that Defendant has failed to show that the Court erred in denying its proposed jury instruction on fraud.

Lastly, Defendant argues in its present motion that the Court's refusal to give its requested jury instruction precluded Defendant from "raising the wrongful conduct rule as a defense to [Intervenor-Plaintiff's] claims," which would have barred Intervenor-Plaintiff from recovering on claims based on its own wrongdoing. However, this supposed defense was never pleaded as a defense in Defendant's answer, and it was never raised, mentioned, or discussed prior to or during trial, or in the joint final pretrial order. Also, Defendant never raised this argument in its brief in support of its proposed jury instruction or in its motion for reconsideration. Therefore, the Court finds that Defendant has waived this argument. *See Am. & Foreign Ins. Co.*, 106 F.3d at 159-60.

Accordingly, the Court finds that its order denying Defendant's proposed jury instruction on fraud did not prejudice Defendant such that a new trial should be granted.

**4.      Hearsay**

Defendant claims that it is entitled to a new trial because the jury was allowed to consider inadmissible hearsay.   Intervenor-Plaintiff's expert, Ronald Rybar, offered expert testimony concerning the reasonableness of Intervenor-Plaintiff's rates.   Mr. Rybar's testimony was based in part on his analysis of rates charges by nine other healthcare agencies.   Defendant contends that statements made by the other healthcare agencies regarding what they charge for services constitutes inadmissible hearsay, which the jury should not have been allowed to consider.

Under Fed. R. Evid. 103(a),

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> (1) Objection. - In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context

*See also Varga v. Rockwell Int'l Corp.*, 242 F.3d 693, 698 (6th Cir. 1985) (stating that a party "may not assert as error the introduction of evidence unless a timely objection is made") (quoting *Helminski v. Ayerst Labs.*, 766 F.2d 208, 211 (6th Cir. 1985)).

Here, Defendant did not object to the admission of Mr. Rybar's testimony on hearsay grounds during trial.  Defendant raised only the following objections: (1) lack of foundation; (2) the testimony invades the province of the jury; (3) the witness is not an expert on the reasonableness of rates; and (4) lack of relevance.   Since Defendant did not object on the basis that Mr. Rybar's

testimony constituted inadmissible hearsay, Defendant's objection is waived. Therefore, the Court finds that a new trial is not warranted on the basis of this alleged violation.

5. **Prior Payments**

Defendant next argues that it is entitled to a new trial because the jury was allowed to consider evidence of Defendant's prior payments to Essential Support Services for Independent Existence ("ESSIE"), the healthcare provider that provided services to Plaintiff immediately before Intervenor-Plaintiff began providing services to Plaintiff. Intervenor-Plaintiff introduced evidence of Defendant's prior payments to ESSIE in support of its claim that Intervenor-Plaintiff's charges were reasonable by comparison. Defendant argues that this evidence is irrelevant because Intervenor-Plaintiff failed to lay a proper foundation to prove that ESSIE's services were similar to the services provided by Intervenor-Plaintiff. For instance, Defendant cites the testimony of Intervenor-Plaintiff's President, Sanford Szirtes, who testified that he did not know what the closed head injury program at ESSIE was, and that he did not personally speak with the case manager at ESSIE regarding Plaintiff's treatment. Alternatively, Defendant argues that the probative value of its prior payments is substantially outweighed by the danger of unfair prejudice. On December 23, 2009, the Court denied Defendant's motion in limine requesting the Court to exclude evidence of its payments to ESSIE on the same grounds advanced in Defendant's present motion.

However, Defendant has failed to present any legal authority supporting the position that Intervenor-Plaintiff was required to establish the degree of similarity between the services provided by ESSIE and those provided by Intervenor-Plaintiff. As the Court held in its December 23, 2009, order denying Defendant's motion in limine, evidence of Defendant's prior payments to ESSIE is relevant because it tends to prove that Intervenor-Plaintiff's charges were reasonable and reasonably

necessary. *See* Fed. R. Evid. 401 ("'Relevant evidence' means evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.") (emphasis added). Since ESSIE and Intervenor-Plaintiff treated Plaintiff for essentially the same injuries, the jury could reasonably infer that there was some degree of similarity in services. The Court finds that Defendant's argument regarding Sanford Szirtes's testimony goes to the credibility of the evidence at issue, rather than its admissibility.

The Court also finds, as it did in its December 23, 2009, order denying Defendant's motion in limine, that the probative value of Defendant's prior payments to ESSIE is not substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."). Defendant claims that it suffered unfair prejudice because the jury was led to believe that Defendant was responsible for paying Intervenor-Plaintiff in the same manner that it paid ESSIE, without considering whether the services provided were similar. However, Defendant seems to ignore the fact that it was given the opportunity to cross-examine Intervenor-Plaintiff's witnesses, including Sanford Szirtes, regarding the similarity between the services provided by ESSIE and Intervenor-Plaintiff. Thus, despite Defendant's contention, the jury was able to consider the issue of similarity in services provided by ESSIE and Intervenor-Plaintiff. Accordingly, the Court finds that a new trial is not warranted based on the admission of Defendant's prior payments to ESSIE.

### 6. Verdict Against the Great Weight of the Evidence

Defendant argues that the jury verdict is against the great weight of the evidence because Intervenor-Plaintiff failed to present "reasonable proof of the fact and amount of its claim."

Defendant relies on the following in support of its position:

1. Janese Chambers, a home health aide employed by Intervenor-Plaintiff, testified that she left Plaintiff alone when she was supposed to have been providing attendant care services.

2. Intervenor-Plaintiff charged for services without written prescriptions from Plaintiff's doctors.

3. Intervenor-Plaintiff charged for replacement services and non-medically necessary transportation services, both of which are non-recoverable.

4. Intervenor-Plaintiff submitted grossly exaggerated charges for services.

5. Intervenor-Plaintiff submitted numerous bills to Defendant containing errors.

6. Intervenor-Plaintiff billed Defendant for services that it did not perform.

7. Testimony by Plaintiff's physicians, Drs. Atkins and Ranier, undercut Intervenor-Plaintiff's claim that its services were related to a hemorrhagic stroke suffered as a result of the automobile accident.

The Court finds that Defendant's arguments, individually and collectively, do not demonstrate that Intervenor-Plaintiff failed to present reasonable proof of the fact and amount of its claim such that a new trial is warranted. The Court will address Defendant's arguments in turn.

First, Defendant argues that one of Intervenor-Plaintiff's home health aides, Jenese Chambers, testified that she left Plaintiff alone when she was supposed to be rendering attendant care services. However, this is only partially true; Chambers testified that she left Plaintiff alone once in a while: "I won't say it happens very often. It's just if it's something right then that she needs and she is not dressed or she is not up to go to get it or -- then that's when I will go without her." Furthermore, Chambers testified that she only left Plaintiff to run errands on Plaintiff's behalf: "Sometimes I have to go to the pharmacy because she has a lot of medications and I pick those up for her or drop her prescriptions off and just small things." Administering Plaintiff's medication was

one of Chambers's responsibilities in providing attendant care.  Chambers also testified that she never ran errands on her own behalf while providing attendant care to Plaintiff.  Thus, the Court finds that Defendant's argument regarding Chambers's testimony does not warrant a new trial.

Second, Defendant argues that Intervenor-Plaintiff charged for services that were not prescribed by Plaintiff's doctors.  However, as the discussed in Part IV(A)(1), expenses are recoverable even if they lack written prescriptions, so long as the expenses consist of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.  Regardless, Plaintiff's physicians testified during trial that the services provided by Intervenor-Plaintiff were medically necessary.  Defendant offered no rebuttal evidence of any kind.  Thus, the mere fact that Intervenor-Plaintiff performed services on Plaintiff's behalf without written prescriptions does not warrant a new trial.

Third, Defendant argues that it should be given a new trial because Intervenor-Plaintiff charged for non-medically necessary transportation services and non-recoverable "replacement services," including grocery shopping, laundry, and housekeeping.  With respect to Intervenor-Plaintiff's transportation expenses, the Court finds that Defendant has failed to show that the jury's verdict awarding damages for such expenses was against the great weight of the evidence.  Since the jury's verdict did not allocate what percentage of damages were related to transportation expenses, neither Defendant nor the Court can determine how much the jury awarded Intervenor-Plaintiff for expenses it incurred in transporting Plaintiff.  Nevertheless, the evidence introduced at trial suggested that many of Intervenor-Plaintiff's transportation expenses were incurred in connection with obtaining medical treatment or for the purpose of medical treatment.  For example, Jenese Chambers testified that she drove Plaintiff to medical appointments and to receive

medication.  Dr. Atkins, Plaintiff's psychiatrist, testified that transportation away from Plaintiff's home, including trips to the grocery store and other social events, was necessary for Plaintiff's rehabilitation to avoid depression, practice social skills, and reintegrate Plaintiff into society.  The jury was also appropriately instructed that it was to award damages for transportation expenses only when such expenses were "incurred in connection with obtaining medical treatment or for the purpose of medical treatment."

Regarding Defendant's argument that Intervenor-Plaintiff charged for non-recoverable "replacement services," including grocery shopping, laundry, and housekeeping, the Court first notes that Defendant has not provided the Court with any legal authority distinguishing "attendant care services," which both parties agree are recoverable under the no-fault act, and "replacement services," which Defendant argues are not recoverable under the no-fault act.  For this reason, the Court finds that Defendant has failed to meet its burden of persuasion.

Even considering the merits of Defendant's claim, Defendant has failed to demonstrate that Intervenor-Plaintiff charged Defendant for grocery shopping, laundry, and housekeeping services. According to the testimony at trial, Intervenor-Plaintiff employed home health aides and therapists to manage Plaintiff's healthcare needs for a certain number of hours per day, in accordance with her doctors' instructions, and such persons were paid by the hour.  For example, Jenese Chambers testified that she provided care for Plaintiff in shifts ranging from five-to-twelve hours.  When seeking reimbursement for its expenses from Defendant, Intervenor-Plaintiff submitted the hourly bills incurred by its employees; Intervenor-Plaintiff did not bill based on each service provided. Therefore, even if Intervenor-Plaintiff's employees performed grocery shopping, laundry, and housekeeping services for Plaintiff during their employment, Defendant could not have been

prejudiced by this because it would not have affected the amount of Intervenor-Plaintiff's invoices, which charged only a fee per hour of care.

Defendant's fourth and fifth reasons for a new trial involve billing errors committed by Intervenor-Plaintiff. Specifically, Defendant states that Intervenor-Plaintiff exaggerated its charges on some occasions and admittedly made errors in the records used to substantiate its invoices on other occasions. However, the jury was able to consider all of the paperwork necessary to determine which charges submitted by Intervenor-Plaintiff were entitled to reimbursement. The paperwork included time records, handwritten notes from Intervenor-Plaintiff's employees, prescriptions, and invoices. In addition, Defendant spent considerable time during trial cross-examining Intervenor-Plaintiff's employees regarding the veracity of their charges, and Sanford Szirtes, Intervenor-Plaintiff's President, testified that Intervenor-Plaintiff was not seeking recovery at trial for instances in which billing errors were made. Furthermore, it appears that the jury considered Defendant's arguments in rendering its verdict, as the jury awarded Intervenor-Plaintiff less than 100% of its requested damages. Thus, the Court finds that Intervenor-Plaintiff's billing errors do not warrant a new trial.

Sixth, Defendant argues that Intervenor-Plaintiff, on certain occasions, failed to provide services to Plaintiff. For instance, Defendant states that one of Intervenor-Plaintiff's therapists was responsible for taking Plaintiff's vitals, but that the therapist did not take Plaintiff's vitals. Even if true, however, Intervenor-Plaintiff's failure to provide various services on various occasions is insufficient to warrant a new trial. Once again, the jury was able to consider all of the paperwork and testimony necessary to determine which services were actually performed. Defendant spent considerable time cross-examining Intervenor-Plaintiff's employees regarding the services they

allegedly performed.  The jury was also instructed that it was only to award damages for charges that were actually incurred, and, as previously noted, the jury awarded Intervenor-Plaintiff less than 100% of its requested damages.  Clearly, the jury understood and accounted for the fact that Plaintiff was not entitled to reimbursement in accordance with every bill submitted.  Furthermore, Defendant's argument borders on questioning the quality of Intervenor-Plaintiff's services.  However, the quality of services rendered is immaterial in determining whether they are recoverable. *See Nasser*, 457 N.W.2d at 645 (stating that expenses are recoverable when they are reasonable in amount, reasonably necessary, and actually incurred).

Seventh, Defendant claims that the jury's verdict is not supported by the evidence because her physicians, Drs. Atkins and Ranier, testified that some of the services provided by Intervenor-Plaintiff were related to a hemorrhagic stroke suffered by Plaintiff.  Defendant argues that it is only responsible for injuries arising out of the 1992 automobile accident.  Defendant offers no further discussion or explanation related to this argument.  As Intervenor-Plaintiff points out, however, Dr. Ranier testified unequivocally that Plaintiff suffered the hemorrhagic stroke as a result of the sudden trauma she experienced in the 1992 automobile accident.  Also, Dr. Atkins testified that Plaintiff's cognitive difficulties were caused by the traumatic brain injury she suffered as a result of the accident.  Thus, the evidence was sufficient to establish that Plaintiff's injuries, including those suffered due to the hemorrhagic stroke, arose out of the 1992 automobile accident.

Lastly, Defendant claims that, considering its above arguments collectively, Intervenor-Plaintiff "failed to establish one of the most fundamental elements of its recovery: reasonable proof of the fact and amount of the claim . . . the supporting documentation simply could not be trusted."  As stated previously, in order to recover, Intervenor-Plaintiff was required to prove that its charges

were reasonable, reasonably necessary, and actually incurred. *See Nasser*, 457 N.W.2d at 645. Defendant does not cite any legal authority supporting the position that Intervenor-Plaintiff was required to submit "reasonable proof of the fact and amount of the claim." The only authority the Court is aware of is Mich. Comp. Laws § 500.3142(2), which provides that a no-fault insurance claimant is entitled to interest on benefits that are not paid within 30 days after an insurer receives "reasonable proof of the fact and of the amount of the loss sustained." However, whether an insured is entitled to interest on overdue benefits is a separate issue from whether the insured is entitled to benefits in the first place.

Nevertheless, the jury was instructed that it was only to award damages for expenses that were actually incurred. In rendering its decision, the jury was able to consider the testimony of Intervenor-Plaintiff's witnesses, invoices, time sheets, medical records, and Defendant's cross examinations. It was the jury's duty to review the evidence and weigh credibility. In awarding damages to Intervenor-Plaintiff, it is clear that the jury considered there to be sufficient proof of the fact and amount of Intervenor-Plaintiff's claims, at least to the extent of its award. Furthermore, the jury's decision to award Intervenor-Plaintiff less than 100% of its requested damages indicates that it scrutinized each expense and did not award damages for those it determined to be unreasonable or not incurred. Thus, the Court finds that Defendant has failed to demonstrate that the jury's verdict is against the clear weight of the evidence.

## C.     MOTION FOR ATTORNEY FEES AND SETOFF

Mich. Comp. Laws § 500.3142 provides the following:

> (2)  Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable

proof is overdue if not paid within 30 days after the proof is received by the insurer. Any part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. For the purpose of calculating the extent to which benefits are overdue, payment shall be treated as made on the date a draft or other valid instrument was placed in the United States mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery.

(3) An overdue payment bears simple interest at the rate of 12% per annum.

At trial, the jury was instructed that if it found that benefits were owed to Intervenor-Plaintiff, it was to determine what portion of those benefits were more than thirty days past due. The jury found that benefits were owed to Intervenor-Plaintiff in the amount of $352,629.16 and that no portion of the benefits were more than thirty days overdue. Defendant argues that because the jury found that no benefits were overdue, Defendant is entitled to its reasonable attorney fees in the form of a setoff against the judgment.

Mich. Comp. Laws § 500.3148 governs the right to receive attorney fees in actions under the no-fault act. Under § 500.3148(1), an attorney representing an insured is entitled to reasonable attorney fees when insurance benefits are "overdue." Benefits are overdue when they are not paid within 30 days after the insurer receives reasonable proof of the fact and of the amount of the loss sustained. *See* Mich. Comp. Laws § 500.3142(2). Under § 500.3148(2), an attorney representing an insurer is entitled to reasonable attorney fees, which may be setoff against an award of benefits, when the claim brought against it was "in some respect fraudulent or so excessive as to have no reasonable foundation."

Defendant presents a perplexing argument in favor of its motion for attorney fees. Defendant requests attorney fees pursuant to § 500.3148(2), but asks the Court to apply the standard for

granting attorney fees in § 500.3148(1). According to Defendant, since counsel for an insured is entitled to attorney fees when benefits are overdue, "[s]imple common sense dictates that the corollary of this maxim . . . must also be true"; that is, counsel for an insurer is entitled to attorney fees when benefits are not overdue. Put differently, Defendant must be contending that a finding that benefits were not overdue is equivalent to a finding that Intervenor-Plaintiff's claim was "so excessive as to have no reasonable foundation."

However, the Court does not agree with Defendant's statutory interpretation. Under the plain and unambiguous language of § 500.3148, counsel for an insured is entitled to attorney fees when benefits are "overdue," and counsel for an insurer is entitled to attorney fees when the insured's claim was "in some respect fraudulent or so excessive as to have no reasonable foundation." *See Pohutski v. City of Allen Park*, 641 N.W.2d 219, 226 (Mich. 2002) ("Where the language is unambiguous, 'we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written.'") (quoting *DiBenedetto v West Shore Hosp.*, 605 N.W.2d 300, 304 (2000)). Here, there is nothing in the statute indicating that the legislature intended to equate "overdue" with "so excessive as to have no reasonable foundation." Despite the wealth of litigation involving insureds and their healthcare providers seeking reimbursement from insurers, Defendant was unable to provide the Court with any legal authority supporting its interpretation. Therefore, the Court does not accept Defendant's argument that Intervenor-Plaintiff's claim was "so excessive as to have no reasonable foundation" merely because the jury found that benefits were not overdue.

Moreover, the Court finds that Defendant's argument is logically flawed to the point of rendering it irrelevant, as the issue of whether benefits were overdue is a separate issue from whether

Intervenor-Plaintiff was entitled to benefits.  As evidenced by the jury verdict form, the jury was asked to engage in two steps of analysis: (1) determine whether, and to what extent, Intervenor-Plaintiff proved by a preponderance of the evidence that it was entitled to reimbursement for expenses incurred in providing care to Plaintiff; and (2) determine what portion, if any, of the benefits owed were more than thirty days overdue, such that statutory interest would be awarded. A finding that Intervenor-Plaintiff failed to prove that Defendant did not pay benefits within thirty days after reasonable proof of the fact and of the amount of the loss sustained does not mean that Intervenor-Plaintiff failed to submit reasonable proof that it was nonetheless entitled to reimbursement for its expenses.  Accordingly, the Court finds that Defendant is not entitled to attorney fees pursuant to Mich. Comp. Laws § 500.3148(2).

## V.  CONCLUSION

Accordingly, for the reasons stated above, Defendant's motion for partial judgment as a matter of law in a jury trial (JMOL) and/or motion for new trial [dkt139] is DENIED.

IT IS FURTHER ORDERED that Defendant's motion to alter or amend the judgment to include a setoff of attorney fees due and owing [dkt 140] is DENIED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  July 8, 2010

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on July 8, 2010.

S/Marie E. Verlinde
Case Manager
(810) 984-3290